### JAMES HART *v.* C. P. MATTINGLY.

**Bill of Exchange—Endorser's Liability.**

Where a bill of exchange, endorsed by A is negotiated at the bank as between A and the bank, A is a principal; and where B for the accommodation of A endorses with him a new bill of exchange as a renewal of the first one, B's liability is that of endorser for A, and if he should have to pay the bill might recover the whole amount from A.

#### APPEAL FROM NELSON CIRCUIT COURT.

March 26, 1875.

OPINION BY JUDGE COFER:

This action was brought by Mattingly against Hart, seeking to charge him as a prior endorser on a bill of exchange for $1,250, which had been held by the Commercial Bank at Lebanon, and taken up by Mattingly, who was the last endorser thereon.

The record developed the following facts: On August 24, 1871, Queen & Bro. drew a bill of exchange for $1,250, payable to J. F. Queen and C. P. Mattingly at ninety days, addressed to Queen Brothers & Co., who accepted it, payable at the Commercial Bank at Louisville. The bill was endorsed by the payees, and discounted by the Commercial Bank at Lebanon, and not being paid at maturity, was protested, and notice given to all the parties to the bill.

Queens, who seem to have been then upon the verge of bankruptcy, desired to renew the bill, and with this view, on the day of its maturity, William Queen, who was a member of both firms, drew a bill for the same amount as the old one upon Queen Bros. & Co., in favor of L. F. Hayden and J. F. Queen. This bill was accepted by the payees, and Mattingly was applied to to endorse it also, but declined to do so. One of the Queens then applied to the appellant, Hart, to endorse for them, which he did, and the bill was sent to the bank at Lebanon as a renewal of the former one; but the bank declined to accept it without the name of Mattingly or some one else regarded by the bank as a satisfactory endorser.

After the last bill had been received at the bank and declined by it, a friend of Mattingly, who had learned that it would not be accepted unless he endorsed it, wrote to him, and advised him that as he was bound on the old bill, and would have Hart before him on the new one, he had better endorse it.

In this letter was enclosed to Mattingly, for Hart, a note from the writer of the letter, warning Hart to keep off Queen's paper. Mat-

tingly delivered the note, and, as Hart testified, they then talked fully about the financial condition of the Queens, and that upon being asked by him whether the bill had been discounted, Mattingly said he did not know, and did not know where it was. He further testified that he then told Mattingly that he hoped it would not be discounted, and that Mattingly told him to say nothing about the bill. A few days after this conversation took place, Hart left home for the south, and did not return until after the bill had matured, and been sued on by the bank.

After the receipt of the letter advising him to endorse the bill, and suggesting that if he would do so Hart would be first liable on it, and after the conversation with Hart, in which Hart says he expressed to Mattingly the hope that the bill would not be discounted, Mattingly went to the Queens and told them that he had been informed that the bill would not be accepted unless he, Mattingly, endorsed it. Queens then wrote for the bill, and it was sent to them and endorsed by Mattingly, and accepted by the bank in payment of the old bill.

Aside from the inference to be drawn from the refusal of Mattingly to endorse the second bill when applied to for that purpose, the record shows that at the time of the conversation with Hart about the bill and the financial condition of the Queens, he knew they were insolvent.

Upon appropriate issues and evidence tending to prove the substance of the foregoing facts, the court instructed the jury, in effect, to find for the plaintiff, which they did; and judgment having been rendered thereon against Hart, and his motion for a new trial having been overruled, he has appealed.

The Commercial Bank at Lebanon was the holder of the first bill, and as between the bank and Mattingly, it was his debt. It makes no difference in this respect that Mattingly had endorsed for the accommodation of Queen, he was, as to the bank, a principal debtor. Being thus indebted to the bank, Mattingly would, as to any person not bound on that bill, be a principal in any subsequent renewal; and it is quite clear that if Hart had endorsed the new bill at the instance of Mattingly, and had taken it up, he could have received from him the amount so paid, no matter what might have been their relative positions on the bill. In that case Hart would have been the accommodation endorser of all those who were bound on the old bill and were parties to the new bill.

How, then, does the attitude of the parties in this case differ from

that in the case first put? It is true that Hart did not endorse in the first instance at the request of Mattingly; but this, we apprehend, is not indispensable in order that Hart may be treated as having endorsed for the benefit of Mattingly.

A cannot become a surety, or an accommodation endorser, for B, without B's request, express or implied; but if, before the bill had been accepted by the bank, Mattingly became aware that Queen, for whom he had become liable, had procured Hart to endorse a bill intended to be used to take up the one on which his liability was already fixed, and that the bank had refused to accept it unless he would endorse it, and he did endorse it after Hart, in order to have it accepted in discharge of his existing liability, he stands as to Hart in the same attitude in which he would have stood if Hart had originally endorsed the bill for his accommodation, and at his request.

The instructions given by the court did not conform to the views herein expressed; and the judgment is therefore *reversed*, and the cause is remanded for a new trial upon principles not inconsistent with this opinion.

*Muir, Wickliffee,* for appellant.
*A. J. James,* for appellee.